**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(C)

Julie M. Murphy
Daniel Pereira
Stradley Ronon Stevens & Young, LLP
457 Haddonfield Rd., Suite 100
Cherry Hill, New Jersey 08002
T: (856) 321-2409
F:
E-Mail: jmmurphy@stradley.com
         dpereira@stradley.com

*Attorneys for Citizens Bank, N.A.*

In re:

NOSTRUM LABORATOREIS, INC.,

Debtor.

Case No. 24-19611 (JKS)

Chapter 11

Requested Hearing Date:

Objection Deadline:

Judge: Hon. John K. Sherwood

**OBJECTION OF CITIZENS BANK, N.A.**
**TO THE DEBTOR'S APPLICATION FOR ORDER SHORTENING TIME**

Citizens Bank, N.A. ("**Citizens**"), by and through its undersigned counsel, does hereby

submit this objection (the "**Objection**") to the Debtor's Application for Order Shortening Time

[Dkt. No. 155] (the "**Application**"), filed in connection with Debtor's Motion for an Order (I)

Extending the Automatic Stay Under 11 U.S.C. § 362(a); (II) for a Preliminary Injunction; and

(III) for a Temporary Restraining Order Pursuant to 11 U.S.C. § 105(a) [Dkt. No. 154] (the "**Stay**

**Motion**"), and in support thereof avers as follows:

**INTRODUCTION**

1.      After nearly two years of protracted litigation, the United States District Court for

the District of New Jersey (the "**District Court**") has now granted summary judgment against the

6103160v.2

debtor's CEO in connection with his independent guarantee of the Debtor's debt obligation to Citizens.

2.      Now the Debtor's CEO, Dr. Mulye, through his control of the debtor, has caused the debtor to seek, on an expedited basis, extension of the automatic stay to protect his assets from the reach of Citizens, despite the fact that he is not a debtor himself and extending the automatic stay to protect his interests will in no way benefit the Debtor's estate or facilitate the Debtor's restructuring efforts.

3.      Despite the Debtor's assertions to the contrary, this is not an "unusual" case that justifies the extension of the automatic stay to non-debtors and there is absolutely no threat of any harm to the Debtor's bankruptcy estate, let alone the kind of imminent or irreparable harm that would justify expedited relief.

4.      This is especially the case because (i) the Debtor has expressly acknowledged its obligations to Citizens, nullifying any risk of collateral estoppel, (ii) any claim for indemnification or contribution by Dr. Mulye against the bankruptcy estate would be an unsecured obligation, subordinate to Citizens' claim and therefore have no impact on the estate, and (iii) the litigation pending in the District Court has concluded and would not distract Dr. Mulye from his assisting debtor's restructuring efforts.

5.      Because the debtor is highly unlikely to succeed on the merits of its underlying motion and because the debtor has failed to cogently identify any risk of imminent or irreparable harm, the Court should reject the debtor's request for expedited relief.

## BACKGROUND

6.      On or about September 30, 2024 (the "**Petition Date**"), Nostrum Laboratories Inc. ("**Nostrum**" or the "**Debtor**") filed a voluntary petition for relief (the "**Petition**") under Chapter

6103160v.2

11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy

Court for the District of New Jersey (the "**Bankruptcy Court**") which was docketed at Case No.

234-19611-JKS (the "**Bankruptcy Case**").

7.     Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains

in possession of its assets and is, upon information and belief, operating its business as a debtor-

in-possession.

8.     As the Court is well aware, Citizens holds a perfected, first priority lien on and

security interest in all of the Debtor's assets, including cash and proceeds thereof, to secure the

Debtor's debt to Citizens.

9.     As the Debtor has expressly acknowledged in numerous cash collateral orders and

as this Court has found, "[a]s of the Petition Date, Debtor was justly and lawfully indebted and

liable to [Citizens] . . .without defense, counterclaim, reduction or offset of any kind, in respect of

loans made and other financial accommodations, the outstanding principal and interest of which

equals $17,528,311.73." *See* Interim Order (I) Authorizing the Debtor to Utilize Cash Collateral

to (A) Pay Postpetition Associates' Wages, Salaries, Other Compensation and Reimbursable

Expenses, (B) Continue the Associate Benefits Programs, and (C) Continue to Pay Key Vendors;

and (ii) Granting Related Relief [Dkt. No. 130] (the "**Third Cash Collateral Order**"), at ¶ 5(b).

10.    The loans giving rise to Citizens' claim against the Debtor's estate were guaranteed

by the Debtor's CEO, Nirmal Mulye, Ph.D. ("**Mulye**") and Debtor's parent company, Nostrum

Pharmaceuticals, LLC ("**NPLLC**").

11.    Prior to the Petition Date, for more than a year and a half, Citizens had been

pursuing collection of the debt from Debtor, Mulye and NPLLC, which matured nearly two years

6103160v.2

ago on December 2, 2022.[1]

12.     On January 31, 2023, Citizens filed a civil action against Mulye in the United States District Court for the District of New Jersey (the "**District Court**") at Case No. 23-cv-00545 (the "**Mulye Action**") based on his guaranty of the Debtor's loan from Citizens.

13.     On September 28, 2023, Citizens filed a separate civil action against the Debtor and NPLLC in the District Court which was docketed at Case No. 23-20765 (the "**Entity Action**"), seeking collection of the debt from Debtor as the primary obligor and NPLLC based on its guaranty of the loans.

14.     On November 20, 2023, Citizens requested leave to file a motion for summary judgment in the Mulye Action.

15.     On April 12, 2024, after many months of discovery, and unwarranted delay on the part of Mulye, the District Court denied Mulye's request for additional discovery, granted Citizens leave to file a motion for summary judgment, and directed the parties to submit a briefing schedule.

16.     On May 17, 2024, Citizens filed its motion for summary judgment in the Mulye Action (the "**Mulye SJ Motion**"), and the Mulye SJ Motion was fully briefed as of July 8, 2024.

17.     On September 24, 2024, Judge Kirsch held an evidentiary hearing to consider Citizens' request for the appointment of a receiver over Debtor, at the conclusion of which Judge Kirsch granted from the bench Citizens' request for the appointment of a receiver, noting the Debtor's lack of candor and reprimanding Debtor's litigation tactics, commenting, "I will be honest with you. I think [Debtor] has done everything it can to delay and engage in all sorts of dilatory antics here."

18.     Just days later and prior to the District Court's entry of the Order appointing a

---

[1] The loans originally matured on August 15, 2022, and the parties entered into a forbearance agreement on October 31, 2022, which expired on December 2, 2022.

6103160v.2

receiver over Debtor, Debtor filed this Bankruptcy Case.

19.     On November 20, 2024, the District Court issued its Opinion granting the Mulye

SJ Motion and entered an Order directing Citizens to prepare a proposed order, within 20 days,

setting forth the amount due consistent with the undisputed amount as of May 15, 2024. A true

and correct copy of the District Court's Opinion is attached hereto as **Exhibit A** and incorporated

herein by reference (the "**SJ Opinion**").

20.     As the District Court noted, Mulye's defenses "are entirely without merit,"

observing that:

> The defense strategy is aptly encapsulated as "throw things against
> the wall and see what sticks." Regrettably, the assertion of patently
> invalid defenses might understandably be leveled by a *pro se*
> litigant, untrained in the law, but is not something this Court expects
> from legal counsel.

Ex. A, Opinion, p. 6 & fn 8.

21.     On November 22, 2024, in response to the District Court's entry of summary

judgment, the Debtor filed the instant Stay Motion in furtherance of Debtor's, NPLLC's and

Mulye's "throw things against the wall and see what sticks" strategy and in an obvious effort to

further delay Citizens' efforts to pursue its rights against Mulye and NPLLC.

22.     Although Citizens has not yet filed a motion for summary judgment against

NPLLC, Citizens intends to do so at the appropriate time.[2]

23.     Further, as set forth more fully below, all of the reasons the automatic stay should

not be extended to Mulye apply with equal force to NPLLC.

24.     Neither Mulye nor NPLLC are funding the Bankruptcy Case.

---

[2] The facts and law underlying Citizens' judgment against Mulye are identical to its claims against
NPLLC and Citizens' anticipates obtaining summary judgment based on the same grounds already
litigated against Mulye.

6103160v.2

25.     NPLLC's liability to Citizens is the same as Mulye's and is based on NPLLC's own, independent guaranty of the Debtor's debt to Citizens.

26.     Indeed, there is no additional discovery or necessary litigation to dispose of Citizens' claims against NPLLC.

27.     NPLLC has raised the exact same defenses to Citizens' claims that the District Court has already found to be wholly without merit.

28.     Under the circumstances, it would be frivolous and vexatious for NPLLC to contest summary judgment given the law of the case and the District Court's findings with respect to Mulye's defenses.

29.     Accordingly, Citizens has requested that NPLLC consent to judgment in favor of Citizens and against NPLLC based on the existing findings of the District Court.

## **ARGUMENT**

30.     The Stay Motion is utterly without merit and Citizens intends to more fully respond to the Stay Motion in compliance with any deadline set by the Bankruptcy Court and/or the local rules.

31.     For now, Citizens is opposing the Debtor's application for expedited consideration of the Debtor's Stay Motion and reserves its right to oppose the Stay Motion on the merits.

32.     The Debtor has not set forth any exigent circumstances justifying expedited consideration of the Stay Motion and, for a number of reasons, expedited consideration is not warranted in this case.

**A.  The Debtor Has Not Identified Any Circumstances Justifying Expedited Relief**

33.     In its application for expedited consideration, the Debtor simply asserts, without any support, that "[t]he Debtor would suffer imminent and irreparable harm absent a shortened

6

hearing." [Dkt. No. 155, ¶ 1].

34.    The Debtor offers no support for this assertion and a review of the Stay Motion does not demonstrate any cognizable grounds for expedited consideration or any risk of imminent or irreparable harm.

35.    The Debtor's argument appears to be that "if Mulye and NPLLC are forced to focus on litigating the Lead Case rather than focusing on reorganization efforts and confirmation of a Plan, it is likely the Debtor will not be able to successfully propose and approve a plan or sell its assets to successfully exit chapter 11."

36.    The Debtor offers no factual support for this assertion.

37.    The Debtor's primary argument seems to be that if Mulye (and by extension, NPLLC) is forced to take time away from the Bankruptcy Case to focus on pending litigation, it would undermine his efforts in the Bankruptcy Case.

38.    The Debtor's position makes no sense as it completely ignores the fact that there is effectively no longer any pending litigation that would distract Mulye from the Bankruptcy Case for the simple reason that discovery in that case has ended, the matters have been fully briefed and the District Court has already granted summary judgment against Mulye in Citizens' favor.

39.    All that is left for the District Court to do is enter the requested Order setting forth the amount due from Mulye to Citizens which will require little to no effort on the part of Mulye. In fact, the Debtor has stipulated to those amounts on numerous occasions.

40.    Because NPLLC has raised the exact same defenses as Mulye and no further discovery is needed, there is also no reason to stay the District Court from deciding NPLLC's liability on summary judgment.

41.    As such, this case is distinguishable from the cases cited by Debtor that stand for

6103160v.2

the proposition that continued, *ongoing* litigation against a Debtor's principal may constitute the "unusual circumstances" justifying extension of the automatic stay.

42.    Tellingly, the Debtor did not request an extension of the automatic stay for nearly two months following the Petition Date, only seeking to extend the stay after summary judgment was decided against Mulye, reflecting that the Consolidated Action poses no imminent threat to the Debtor's Bankruptcy Case and the Stay Motion is merely a bad faith effort by Mulye to shield himself from liability for his guaranty of the Debtor's obligations to Citizens.

43.    Because the District Court has already granted Citizens' summary judgment against non-debtor, Mulye, and non-debtor NPLLC's defenses are the exact same as Mulye's (and similarly meritless), the continuation of that action will have little to no impact on Mulye's attention to the Bankruptcy Case.

**B. The Debtor Is Unlikely to Succeed on the Merits Because the Stay Motion is Utterly Without Merit.**

44.    Debtor has failed to demonstrate any emergent circumstances or imminent harm and, on that basis alone, the Court should deny the request for expedited relief.

45.    However, putting aside the lack of exigent circumstances or imminent harm, this Court should deny the Debtor's request for expedited consideration and an injunction because the Debtor's Stay Motion lacks merit.

**1. This Case Does Not Involve "Unusual Circumstances" That Would Justify Extension of the Automatic Stay.**

46.    Although Citizens intends to file a more fulsome opposition to the Stay Motion by the applicable deadline, it is worth addressing why Debtor is highly unlikely to succeed on the merits of the Stay Motion further undermining Debtor's request for expedited relief.

47.    As the Debtor correctly notes, the automatic stay does not typically extend to non-debtors absent "unusual circumstances." *Stay Motion*, p. 7.

6103160v.2

48.      This is not an unusual case; rather, this is a run-of-the-mill case in which a principal

and an affiliate of a debtor have independently guaranteed the debtor's obligations to its lender.

49.      "[I]t is universally acknowledged that an automatic stay of proceedings accorded

by § 362 ***may not*** be invoked by entities such as sureties, guarantors, co-obligors, or others with a

similar legal or factual nexus to the . . . debtor." *McCartney v. Integra Nat'l Bank N.A.*, 106 F.3d

506, 509-10 (3d Cir. 1997) (emphasis added) (quoting *Maritime Elec. Co. v. United Jersey Bank*,

959 F.2d 1194, 12034 (3d Cir. 1991)).

50.      Here, Mulye's and NPLLC's obligations to Citizens arise from their own,

independent undertaking to guaranty the obligations of the Debtor.

51.      There is simply no basis to extend the protections of the automatic stay to Mulye

and NPLLC in order to shield Mulye's assets from his creditors without subjecting him to the

scrutiny of the Bankruptcy Court which would necessarily accompany his own bankruptcy filing.

52.      The cases cited by Debtor are inapposite.  For example, *McCartney*, did not involve

any extension of the automatic stay to a guarantor. 106 F.3d at 506.

53.      Instead, the issue was whether the debtor's secured creditor failed timely to file an

action against the non-debtor guarantor for a deficiency judgment within the 6-month limitations

period imposed by the Pennsylvania Deficiency Judgment Act. *Id.* at 508.The debtor in *McCartney*

argued that the creditor was barred from pursuing a deficiency claim against the guarantor because

it had failed to do so within the statutory time limit. *Id.*

54.      However, the bankruptcy court noted that the creditor could not file such an action

because Pennsylvania law requires that the principal obligor be named in such a suit and the

debtor's bankruptcy stay prevented that. *Id.* at 509.

55.      As a result, the court held that the creditor's deficiency claim against the non-debtor

6103160v.2

guarantor was not time barred.

56.   Here, Mulye's and NPLLC's obligations to Citizens arise from their independent, individual guaranties of the Debtor's obligations, a scenario which numerous courts, including the Third Circuit in *McCartney*, have found do not justify extension of the automatic stay. *See Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (noting that "the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor" and that "proceedings in a single case are not lumped together for purposes of automatic stay analysis").

57.   Accordingly, there are no "unusual circumstances" present and the Stay Motion is utterly without merit.

**2.   There Is No Risk of Collateral Estoppel in the Present Case Because, Among Other Things, Debtor Has Acknowledged Its Debt to Citizens and the District Court Has Already Granted Summary Judgment.**

58.   In another case cited by Debtor, *In re American Film Technologies, Inc.*, 175 B.R. 847, 855 (Bankr. D. Del. 1994), the court extended the automatic stay to the debtor's former and present directors in connection with litigation over a former employee's wrongful discharge claims.

59.   The court cited the debtor's indemnification obligations to the directors as well as concerns regarding collateral estoppel; however, the facts and circumstances of *American Film* diverge significantly from the present action.

60.   First, the debtor in *American Film* had indemnification obligations to the directors for claims arising from their conduct in managing the debtor's employment actions which involved not just claims for contribution, but an obligation to fund the directors' ongoing defense obligations. *Id.* at 851.

61.   Second, significant collateral estoppel issues existed because the state court

10

6103160v.2

litigation involved significant, disputed factual issues. *Id.* at 853. There, the litigation was ongoing and neither the debtor's nor the directors' liability had been determined, which lead to the court's conclusion that the state court litigation could expose the debtor to collateral estoppel prejudice if it did not participate in the case

62.     Here, once judgment is entered, nothing remains for decision in the District Court Action and Debtor's participation is completely unnecessary.  Discovery has concluded and the District Court has already granted summary judgment.

63.     The only remaining open issue is the exact dollar amount of Citizens' judgment against Mulye.

64.     And although Citizens has not yet moved for summary judgment against NPLLC, because any such motion would involve essentially the same exact facts and legal arguments as the Mulye SJ Motion, there is no reason to prevent the District Court from similarly adjudicating NPLLC's liability at the appropriate time.

65.      The Debtor has already acknowledged the principal and interest amount of its debt as of the Petition Date and, as this Court found, "Debtor was justly and lawfully indebted and liable to [Citizens] . . .without defense, counterclaim, reduction or offset of any kind, in respect of loans made and other financial accommodations, the outstanding principal and interest of which equals $17,528,311.73."

66.     Thus, contrary to Debtor's assertion, there is no risk of collateral estoppel prejudice because the Debtor does not, in fact, retain the ability to contest the amount of Citizens' claim comprised of principal and interest. Stay Motion, p. 8 (asserting that "Debtor retains the ability to contest the amount of any claim by Citizens").

67.     Accordingly, there is no substantial collateral estoppel issue here.

6103160v.2

**3. Even Assuming Mulye Has Indemnification Claims Against the Debtor's Estate, Such Claims Will Not Have Any Significant Effect on the Bankruptcy Case.**

68.     The Debtor's arguments regarding indemnification also carry no weight.

69.     Debtor asserts that if judgment is entered against Mulye, he will be "forced" to make a claim against the bankruptcy estate which will "irreparably harm the bankruptcy estate." Stay Motion, at p. 5.

70.     The Debtor's argument is utterly nonsensical.

71.     As an initial matter, it is doubtful that the Debtor has an obligation to indemnify Mulye for his independent guaranty of the Debtor's obligations to Citizens, which he undertook in his personal capacity and not in his capacity as a director or officer of the Debtor.

72.     Although Debtor asserts that its bylaws provide that Debtor will provide the "broadest possible indemnification permitted by law to its officers, directors, and trustees," Mulye's liability to Citizens does not arise from any conduct connected to his management of Debtor or his official capacity as a director of the Debtor that would warrant indemnification from the Debtor in the first place.

73.     New Jersey law, which governs the Debtor's bylaws, specifically limits a corporation's power to indemnify its officers and directors to proceedings "involving the corporate agent *by reason of his being or having been such a corporation agent* . . . ." N.J.S.A. § 14A:3-5(2).

74.     In contrast, Mulye's liability arises from his own personal, independent guaranty of the Debtor's loan obligations in his individual capacity. This is not the type of liability that would ever entitle a principal to indemnification under a corporation's bylaws. *See Confederate Motors, Inc. v. Terny*, 859 F.Supp.2d 181, 190 (D. Mass. 2012) (holding that director was only entitled to advance of legal fees incurred in connection with proceedings against him arising from

6103160v.2

conduct in his official corporate capacity); *Golisano v. Turek*, 2015 WL 3522470, at \*5 (rejecting officer's claim for indemnification from corporation where his liability was based on guaranty signed in his individual capacity and such liability did not arise from his position as a director or officer).

75.    Even assuming, *arguendo*, that Mulye might have a claim for contribution against the Debtor's estate, such a claim will have **no** impact on the bankruptcy estate because such claim would be for the same debt Debtor owes to Citizens.

76.    As such, every dollar paid by the bankruptcy estate to Citizens would reduce Citizens' claim against Mulye and, in turn, reduce Mulye's claim against the estate.

77.    The opposite is also true. Every dollar Citizens is able to recover from Mulye will result in a dollar-for-dollar reduction of Citizens' claim against the Debtor's estate, thereby benefiting rather than harming Debtor's creditors.

78.    Accordingly, permitting Citizens to pursue its rights against Mulye will benefit rather than negatively impact the Debtor's estate.

79.    Moreover, even to the extent Mulye is entitled to contribution from the Debtor, any such claim is necessarily subordinate to Citizens' claim, meaning that Mulye would not be entitled to recover from the estate unless and until Citizens' claim is satisfied in full, at which point, Citizens' claims against Mulye would also be satisfied and Mulye would no longer have a claim against the estate.

80.    Further, any claim that Mulye files against the estate for contribution will be subject to the ordinary claims allowance process, would be resolved contemporaneous with Citizens' claims, and would have no immediate impact on the estate.

81.    As such, the fact that Mulye may have an essentially meaningless claim for

contribution against the Debtor's estate will not have any impact on the administration of the estate

and does not justify extension of the automatic stay.

    **4. There Is No Risk That Mulye Will Be Distracted to the Detriment of the Bankruptcy Estate.**

  82. Debtor further asserts that continued litigation in the Consolidated Action will

result in irreparable harm because Mulye will be distracted and the litigation will waste the

"precious resources of Debtor to litigate the case."

  83. Nothing could be farther from the truth.

  84. This is not the type of case in which courts have extended the automatic stay

because of ongoing litigation against a debtor's principals or officers.

  85. As noted above, the District Court has already granted summary judgment so there

is no risk that continuing litigation will distract Mulye from participating in Debtor's

reorganization.

  86. Further, there is nothing to suggest that the Debtor's participating is necessary in

any way for the District Court to enter the Order setting the amount of Citizens' judgment against

Mulye.

  87. It is worth noting, as Debtor acknowledges, that Debtor has retained Raymond

James to manage Debtor's restructuring efforts.

  88. Accordingly, this is not the type of case in which a debtor's principals are the sole

persons responsible for managing the debtor's reorganization. *Cf. In re Lazarus Burman

Associates*, 161 B.R. 891, 896 (Bankr. E.D.N.Y. 1993) (noting that the partners of the debtor were

solely responsible for managing the debtor's business and its reorganization efforts).

  89. Nor is Mulye or NPLLC contributing anything of monetary value to the Bankruptcy

Case or the Debtor's restructuring. *Id.* (extend automatic stay, in part, because the debtor's partners

6103160v.2

had committed to contributing between $1 million and $1.6 million of their own funds to restructure the debtor's loan obligations).

90.     Because the litigation against Mulye has largely concluded, the only thing left for the District Court to do is fix the amount of Citizens' judgment, and Citizens' claims against NPLLC are essentially identical to its claims against Mulye, there is no risk that Mulye's, or the Debtor's, participation in the Consolidated Action will result in such a distraction as to undermine the Debtor's reorganization efforts.

## **WAIVER OF MEMORANDUM OF LAW**

91.     Citizens requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which Citizens relies is set forth herein and this Objection does not raise any novel issues of law.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Citizens respectfully requests that this Court enter an order denying the Debtor's request for expedited consideration of the Stay Motion.

Date: November 24, 2024

STRADLEY, RONON, STEVENS & YOUNG, LLP

*/s/* Julie M. Murphy
Julie M. Murphy, Esquire
Daniel M. Pereria, Esquire
Stradley Ronon Stevens & Young LLP
457 Haddonfield Road, Suite 100
Cherry Hill, NJ  08002
Tel: (856) 321-2409
Fax: (856) 321-2415
E-Mail: jmmurphy@stradley.com
E-Mail: dpereira@stradley.com

and

15

6103160v.2

/s/ Gretchen M. Santamour
Gretchen M. Santamour, Esquire (admitted *pro hac vice*)
Stradley Ronon Stevens & Young LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Tel: (215) 564-8523
E-Mail: gsantamour@stradley.com

16