| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1**<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>Telephone: (973) 538-4006<br>Robert M. Schechter, Esq.<br>(rmschechter@pbnlaw.com)<br>Kelly D. Curtin, Esq.<br>(kdcurtin@pbnlaw.com)<br>Michael F. Medved, Esq. (admitted *pro hac vice*)<br>(mfmedved@pbnlaw.com)<br><br>*Counsel to the Official Committee of Unsecured Creditors* |

| | |
|---|---|
| In re:<br><br>NOSTRUM LABORATORIES, INC.,<br><br>                        Debtor. | Chapter 11<br><br>Case No. 24-19611 (JKS)<br><br>Honorable John K. Sherwood, U.S.B.J.<br><br>**Objection Deadline:** TBD<br>**Hearing Date and Time:** TBD |

**MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR AN ORDER AUTHORIZING THE COMMITTEE TO MARKET
THE DEBTOR'S ASSETS FOR SALE IN A JOINT CAPACITY WITH THE DEBTOR
AND APPROVING BIDDING PROCEDURES**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case (the "Chapter 11 Case") of the above-caption debtor (the "Debtor") hereby files this motion seeking entry of an order, substantially in the form of Exhibit 1 attached hereto, (i) authorizing the Committee to oversee in a joint capacity with the Debtor the marketing of the Debtor's assets for sale with the investment banker appointed in this case, Raymond James &

7959369

Associates, Inc. ("Raymond James") and (ii) approving the Committee's proposed bidding procedures (the "Bidding Procedures")[1].

## PRELIMINARY STATEMENT

The Committee is seeking additional authority in the Debtor's sales process in the form of a seat at the table that is analogous to the seat the Debtor holds. The Committee submits that whether the Court determines (1) that the Committee shall have the authority to provide instruction and direction to Raymond James at each step of the sale process, or (2) require that Raymond James confer with the Committee in real-time on each of the considerations and strategy decisions to be made in the sale process going forward, either approach will move this estate forward with significant protection against any further waste of time or resources by the Debtor.

To date, the professionals in this case have worked collaboratively where possible and have successfully moved the case forward toward a sale. The Committee believes that the sales process in this case, however, is now subject to unnecessary risk if the Debtor remains the sole authority over the process. The Committee's rationale for seeking such relief is that the Debtor has gone through two separate attorneys that have withdrawn since the start of the case, has filed an application to retain its third counsel, and as the Debtor's new counsel works to get up to speed on the issues, the Committee believes that the estate cannot afford the risk of being compromised by a failure of the Debtor to adhere to the sale process or satisfy upcoming sale milestones established pursuant to the *Final Order Authorizing the Debtor to Utilize Cash Collateral (A) To Pay PostPetition Associates' Wages, Salaries, Other Compensation and Reimbursable Expenses, (B)*

---

[1] The Committee has drafted a form of bidding procedures that the Committee has attached hereto as Exhibit 2 that the Committee intends to update to final form, (in consultation with Raymond James, Citizens Bank, N.A. ("Citizens") and the Debtor), prior to the hearing on this Motion. The Committee submits that the final form of Bidding Procedures to be fully considered by the Court in respect to this Motion will be the latest version of the Bidding Procedures entered on the docket of this case prior to the hearing on this Motion after the Committee considers comments from the key parties-in-interest.

7959369

*Continue the Associate Benefits Programs, and (C) Continue to Pay Key Vendors; and (II) Granting Related Relief* (the "Final Cash Collateral Order") [Docket No. 186].[2]

At this juncture, the Committee is specifically seeking a path forward for the benefit of all stakeholders to have trust in the process by requesting the Court's approval of the Committee serving as a joint decision-maker with the Debtor to work directly with Raymond James and to safeguard against any derailment of the sales process. The Committee is an independent fiduciary represented by estate professionals that is committed to establishing a customary, fair, and open process to market and sell the Debtor's assets for the highest and best value. Additionally, the Committee has been involved in the sales process since its outset and will help assure the market of continuity without risk of disruption despite the Debtor's third counsel change.

Moreover, without approval from Citizens to modify milestone dates established in the Final Cash Collateral Order, Citizens may call a default that will compromise the opportunity for a successful sale. Specifically, in regard to the sales timeline established in the Final Cash Collateral Order, Section 17(iv) of the Final Cash Collateral Order provides that by January 20, 2025, "the Debtor shall have received one or more 'stalking horse' bids reasonably acceptable to [Citizens] (the "Stalking Horse Deadline")" and Section 17(v) of the Final Cash Collateral Order provides that January 24, 2025 is the deadline for the "filing of a motion to designate a stalking horse(s) and/or approve bidding procedures reasonably acceptable to [Citizens]". The Committee understands that Citizens may be amenable to short extensions of certain milestones in the sale process based upon the continued growing interest for the Debtor's assets in the marketplace – as opposed to calling an event of default - if the sale process can remain on its current productive

---

[2] Shortly before the filing of this motion, Citizens advised the Committee, through counsel, that Citizens' understanding is that Raymond James is awaiting certain documentation from the Debtor that is delaying Raymond James' ability to market certain assets.

7959369

track with, among other things, the Committee's further involvement as suggested herein and the Debtor's cooperation. Specifically, although the Stalking Horse Deadline has passed, the Committee understands that Citizens may wish to see the sales process through so long as Citizens is comfortable that the process is running in a proper form. The Committee submits that the relief the Committee is seeking will help keep Citizens along with all parties-in-interest comfortable with the process. The Committee also notes that in the form bidding procedures it has drafted, the Committee is including Citizens with consultation rights and is proposing a transparent dispute resolution process in the event there is a disagreement between the Debtor and the Committee on which direction the sales process should go whereby Citizens, and other parties in interest, would have the ability to weigh in.

The Committee, prior to filing this Motion, has informed Citizens' and the Debtor's professionals of the Committee's intention to seek the relief requested herein. Relatedly, pursuant to Section 16(d) of the Final Cash Collateral Order (the "Open Discussions Provision"), "[t]he Debtor authorize[d] Raymond James to have open discussions with … [the Committee] concerning the 363 Sale process, the Debtor's cooperation with Raymond James or any other information relevant to Raymond James's services provided to the Debtor in the above-captioned case." The Committee is therefore simply asking the Court for entry of an order that adds one additional safeguard based upon the specific facts of this case requiring Raymond James to confer with and seek direction from the Committee on determinations to be made in advancing the sale process or confer with the Committee in real time on sale related decisions. The Committee has been receiving weekly updates from Raymond James and Raymond James has been both cooperative and transparent, but that the process in its current form, considering the Debtor's circumstance, is simply not enough. The Committee's proposal will add to efficiency and guard against the Debtor

7959369

wasting unaffordable time and resources in moving the sale process in a direction that may only later be objected to by the Committee, Citizens or any other party-in-interest that is concerned about the Debtor being solely at the helm in this sale process.

Exhibit 2 attached herein is a form of bidding procedures that the Committee has drafted on its own to initiate what it anticipates should be productive and collaborative discussions with Citizens, Raymond James and the Debtor. The Committee's intention is to have a final form of bidding procedures that has been reviewed by Citizens, Raymond James and the Debtor presented to the Court upon the hearing of this Motion. Although the Committee notes that this is a unique situation and therefore a unique approach, the Committee submits that in light of the inability for the Debtor to maintain continuous representation in this case, the history with Citizens including the prior filing of a motion to appoint a chapter 11 trustee, recent information from Citizens that Raymond James is experiencing delay because it requires certain documentation from the Debtor, and the Debtor's CEO and his family member(s) holding interests in related entity(ies) and/or entity(ies) transacting with the Debtor, that this is the pathway for this sales process to be trusted, transparent and successful for the Debtor and all other parties-in-interest in this case.

The Committee also notes that it has served document requests on the Debtor that have been outstanding for almost two months and although the Debtor has produced some documents related to other requests of the Committee, the Debtor has not produced any document requests that the Committee served regarding the Debtor's dealings with related parties. To ensure the sales process is fair and ultimately results in the best result, the Committee presents that it is in the best interest of the entirety of the Debtor's estate that the Committee is "in the room" for determinations on all aspects of the Debtor's sales process in real time. The Court appointing the Committee as requested herein will protect the Debtor and this process from potential perceptions of

7959369

questionability of the Debtor's actions moving forward due to the Debtor's CEO, in addition to having his family members holding interests in related entity(ites) and/or entity(ies) transacting with the Debtor, also being the Founder and President of the Debtor's parent corporation, Nostrum Pharmaceuticals LLC, that holds all ownership interest of the Debtor.

In the coming days, in addition to finalizing bidding procedures with Citizens, the Debtor and Raymond James, the Committee intends to engage with Raymond James on continued discussions with prospective buyers of the Debtor's assets. In the event that the Committee determines that it is in the best interests of the estate to propose any particular stalking horse bid and any related bid protections, the Committee will ask the Court to approve the same in connection with this Motion.

To reiterate, the Committee is not seeking a wholesome overhaul of the sales process but rather a seat at the table to ensure the sales process runs smoothly on a go-forward basis. The Committee envisions that this relief comes in the form of the Court granting the Committee the right to either direct Raymond James on each step in the sales process moving forward or to require that Raymond James confer with the Committee in real-time on the decisions and considerations being made in the sales process. The Committee already has the right to speak directly with Raymond James pursuant to the Open Discussion Provision, but especially in light of the deadlines in this sales process, the Committee is asking the Court for ordered relief in being involved with decisions in the sales process at inception so that the Committee and Raymond James can enjoy the clarity of the relationship and all parties-in-interest can enjoy the best outcome of this sale process.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein are sections 105(a), and 363 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure.

**FACTUAL BACKGROUND**

3. On September 30, 2024 (the "Petition Date"), the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") initiating this bankruptcy proceeding [Docket No. 1].

4. Immediately thereafter, the Court issued an Order to Show Cause Why Case Should Not Be Dismissed for Failure to File Documents or Extend Time [Docket No. 1], which ordered the Debtor to demonstrate why the Debtor failed to file numerous required documents in this bankruptcy proceeding.

5. Nearly a week after the Petition Date, on October 7, 2024, Debtor's first attorney decided to exit this case and the Debtor's second attorney was appointed. (Docket No. 25).

6. On October 21, 2024, the United States Trustee docketed the Notice of Appointment of Official Committee of Unsecured Creditors.

7. On October 21, 2024, the Committee designated Porzio, Bromberg & Newman, P.C. as its counsel.

8. On November 22, 2024, the Court entered an Order approving the retention of Porzio as counsel to the Committee nunc pro tunc to October 21, 2024.

9. On or about November 6, 2024, Raymond James was retained as Debtor's Investment Banker. (Docket No. 123).

10. On December 11, 2024, the Court entered the Final Cash Collateral Order that instituted certain deadlines for the Debtor's sales process: (1) January 17, 2025 was established as the deadline for submission of non-binding indications of interest. (2) January 20, 2025 was established as the deadline for the Debtor receiving one or more 'stalking horse' bids reasonably acceptable to Citizens, and (3) January 24, 2025 was established as the deadline for the filing of a motion to designate a stalking horse and/or to approve bidding procedures reasonably acceptable to Citizens.

11. On or about January 15, 2024, the Debtor's second attorney advised that his firm would be exiting the case and an application for a third attorney for the Debtor to be appointed was filed with the Court. (Docket No. 225).

12. Since Raymond James has been appointed, Raymond James has been running the sales process, eliciting bids for the Debtor's assets and keeping the Committee regularly informed. However, with the now third change in the Debtor's representation, and other history in this case, the sales process faces challenges with adherence to the sales timelines established in the Final Cash Collateral Order and risks an unaffordable waste of time and resources if there is any further derailment.

## LEGAL ARGUMENT

**A. The Court Should Approve the Bidding Procedures In Order to Facilitate An Expedited Process to Maximize the Value Received for the Debtors' Assets.**

13. Section 363 of the Bankruptcy Code provides that a sale of a debtor's assets out of the ordinary course of business may occur after notice and a hearing. 11 U.S.C. § 363(b). A sale

7959369

of a debtor's assets should be authorized if a sound business purpose exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (2d Cir. 1986); *In re Engman*, 395 B.R. 610, 620 (Bankr. E.D. Mich. 2008); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Ry. Co.*, 124 BR. 169, 176 (D. Del. 1991); see also *Official Committee of Unsecured Creditors v. The LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

14. The Committee, as an independent fiduciary, is committed to achieving the goal of a sale of property of the estate to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Hupp Indus.*, 140 B.R. 191 (Bankr. N.D. Ohio 1992*); In re Integrated Resources*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the. . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (*quoting In re Atlanta Packaging Prods., Inc.*, 99 BR. 124, 130 (Bankr. N.D. Ga. 1988)). As long as the sale appears to enhance a debtor's estate, court approval of a trustee's decision to sell should only be withheld if the trustee's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Lajijani*, 325 B.R. 282, 289 (9th Cir. B.A.P. 2005); *In re New Era Resorts, LLC*, 238 B.R. 381, 387 (Bankr. E.D. Tenn. 1999) ("[T]he court has broad

discretion in determining whether to approve a sale other than in the ordinary course of business."); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.")

15. Courts uniformly recognize that having procedures in place to enhance competitive bidding and facilitate an open and fair process are consistent with the goal of maximizing the value received by the estate and in the context of asset sales in bankruptcy proceedings. *See, e.g., In re Cormier*, 382 B.R. 377, 388 (Bankr. W.D. Mich. 2008) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.") (quoting *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998)); *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

B. **The Court May Provide the Committee With Greater Authority in This Sales Process Pursuant to Section 105(a) of the Bankruptcy Code.**

16. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Committee submits that in order for the Debtor's estate to receive the best possible result via a sale of the Debtor's assets pursuant to Section 363(b) of the Bankruptcy Code, the Committee having greater authority with respect to the sales process will maximize value by ensuring parties-in-interest and the open market that an independent fiduciary that has been present from the beginning of the process will now be in a position to ensure that a fair and efficient sales process will be run to its completion with transparency. Courts have the ability to

7959369

"craft a remedy" by issuing any order to carry out provisions of the Bankruptcy Code. "[T]he ability to craft a remedy appears to fall squarely within the confines of 11 U.S.C. § 105(a), which allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Jughandle Brewing Co.,* LLC, No. 23-15703 (CMG), 2024 WL 2819626, at *6 (Bankr. D.N.J. June 3, 2024). Moreover, as the Third Circuit has recognized, bankruptcy courts are courts of equity and as such, bankruptcy courts have broad authority to modify the relationships between the debtor and its creditors. "[B]ankruptcy courts, as courts of equity, have broad authority to modify creditor–debtor relationships." *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 567 (3d Cir. 2003), citing *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

17.     In this case, the Committee submits that the Court issuing an order authorizing the Committee to act with greater authority with respect to the Debtor's sales process is not only permitted by the Bankruptcy Code, but is in fact the exact type of remedy contemplated by the inclusion of Section 105(a) of the Bankruptcy Code. The Committee's goal is to maximize the amount received in the Debtor's sales process- which is consistent with all parties-in-interest and Section 363(b) of the Bankruptcy Code- and at this point the Committee believes that stepping into an authority role in the sales process will bring confidence to the creditor body and the open market. The reality of this case is that (i) the Debtor is now on its third counsel that may or may not be able to get up to speed in time to meet the sales milestone deadlines and, based on the history of this case, may or may not continue to counsel the Debtor; (ii) the Debtor has had to bring its largest customer into Court to reach an interim resolution on amounts owed; (iii) the Debtor's secured creditor has expressed serious and significant concern with the Debtor, even

7959369

filing a motion to appoint a trustee early in this case; and (iv) the Debtor's business includes dealings with related parties and businesses with interests held by family members of the Debtor's CEO. As such, the Committee stepping into this role to promote confidence in the sales process will benefit the entirety of the Debtor's estate.

18. Moreover, in light of the Open Discussions Provision, the Committee submits that the relief being requested is not a wholesome overhaul of the sales process that has already been proceeding with the Court's approval but rather is a mechanism to slightly improve the guardrails in the sales process on an ongoing basis so that the Committee is engaged in initial decision making as opposed to reviewing of Debtor decisions that are not exposed in real time and prove too costly in time and money for this estate. Notably, the Committee, pursuant to the Open Discussions Provision, has already been given the authority to engage with Raymond James in discussions on the Debtor's cooperation in the sales process. The Committee is now simply asking for *proactive* rather than *reactive* authority to ensure the process runs smoothly with transparency for parties-in-interest and without waste. And, the Committee submits that this can take the form of either the Committee being given the authority to direct Raymond James in the sales process moving forward, or to require that Raymond James confer with the Committee on decisions in the sales process on a real-time basis.

19. Lastly, the Committee proposes that in the event the Committee is provided joint decision-maker authority by the Court and at a later point in time there is a dispute between the Debtor and the Committee regarding an action to be taken in the sales process (or a proposed modification to the Bidding Procedures), that either party shall have the ability to file a letter with the Court on the docket of this Case requesting a telephonic status conference with the Court (that may be attended by any party in interest of this case) by which the Court, upon receipt of

7959369

such request, shall issue a time and date for the telephonic status conference whereby the Court will provide direction on how the dispute shall be resolved (the "Dispute Process"). The Committee submits that although this may seem to be an uncommon process, the concept is to simply give the Committee, (that has had the same professionals involved in this matter throughout), the ability to ensure this sales process moves in the right direction on a real-time basis with this additional mechanism in place for transparency and minimization of risk to the estate.

## WAIVER OF MEMORANDUM OF LAW

20. The Committee respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-(1)(a)(3) because the legal basis upon which the Committee relies is set forth herein and the Motion does not raise any novel issues of law.

## RESERVATION OF RIGHTS

21. Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as a waiver of the Committee's rights to object to any bidding procedures or any other item related to the sales process submitted by any other party in this case.

## NO PRIOR REQUEST

22. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## NOTICE

23. The Committee will provide notice of this Motion to the following parties and/or their respective counsel, as applicable, (a) the Debtor, (b) the office of the United States Trustee

7959369

for the District of New Jersey, (c) Citizens, (d) Raymond James, and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court enter an order, substantially in the form filed herewith, granting the relief requested herein, and such other relief as is just and proper under the circumstances.

Dated: January 21, 2025    **PORZIO, BROMBERG & NEWMAN, P.C.**

By:  */s/ Robert M. Schechter*
Robert M. Schechter, Esq.
Kelly D. Curtin, Esq.
Michael F. Medved, Esq. (admitted *pro hac vice*)
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
Telephone: (973) 538-4006
rmschechter@pbnlaw.com
kdcurtin@pbnlaw.com
mfmedved@pbnlaw.com

*Counsel to Official Committee of Unsecured Creditors*

7959369