| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. L.R. 9004-1(b)**<br><br>**GREENBERG TRAURIG LLP**<br>Alan J. Brody, Esq.<br>500 Campus Drive, Suite 400<br>Florham Park, NJ 07932<br>Tel: (973) 443-3543<br>Fax: (973) 360-7900<br>BrodyA@gtlaw.com<br><br>Oscar N. Pinkas, Esq.<br>One Vanderbilt Avenue<br>New York, NY 10017<br>Tel: (212) 801-9200<br>Fax: (212) 801-6400<br>pinkaso@gtlaw.com<br><br>*Counsel for Raymond James & Associates, Inc.* | |
| In re:<br><br>**NOSTRUM LABORATORIES, INC.***,*<br><br>Debtor. | Chapter 11<br><br>Case No. 24-19611<br><br>Honorable John K. Sherwood, U.S.B.J. |

### STATEMENT OF RAYMOND JAMES & ASSOCIATES, INC., AS DEBTOR'S EXCLUSIVE INVESTMENT BANKER, TO DEBTOR'S APPLICATION FOR RETENTION OF PROFESSIONAL

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Raymond James & Associates, Inc. ("**Raymond James**"), in its capacity as exclusive investment banker for Nostrum Laboratories, Inc. (the "**Debtor**"), hereby files this statement (this "**Statement**") to the Debtor's *Application for Retention of Professional* [Docket No. 266] (the "**Supplemental Banker Retention Application**") regarding the engagement of BDA Partners

ACTIVE 707584114v2

Limited ("**BDA**") as its supplemental investment banker, and in support hereof respectfully states as follows:

## STATEMENT

1.  On September 23, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, initiating the above-captioned chapter 11 case (the "**Chapter 11 Case**"). The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  On October 22, 2024, the Debtor filed the *Debtor's Application for Entry of an Order (I) Authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for the Debtor, Effective Nuc Pro Tunc as of the Petition Date, (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-1, and (III) Granting Related Relief* [Docket No. 81] (the "**Exclusive Banker Retention Application**") seeking the employment and engagement of Raymond James as the Debtor's exclusive investment banker in connection with the Chapter 11 Case. The Debtor selected Raymond James to be its exclusive investment banker "because, among other things, Raymond James has considerable expertise and experience and an excellent reputation in providing high quality financial advice and investment banking services[.]" and because "[t]he Raymond James Life Sciences practice provides comprehensive advisory and financing capabilities to innovative businesses in the biotechnology, specialty pharmaceutical and generic pharmaceutical sectors." *See* Lead Banker Retention Application ¶¶ 9, 12. The Debtor believes that it requires the services of a capable and experienced investment banking firm and chose Raymond James to fulfil a crucial role to the Debtor's success in the Chapter 11 Case. *See id.* ¶ 13.

3.  As set forth in Raymond James's Engagement Letter Agreement (as defined in the Lead Banker Retention Application), the Debtor selected Raymond James as "its sole and

2

exclusive investment banking advisor….".  Further, the Engagement Letter Agreement requires all contact with potential buyers occur with Raymond James.[1]

4. On November 6, 2024, this Court entered the *Order (I) Authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for the Debtor, Effective Nunc Pro Tunc as of the Petition Date, (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-1, and (III) Granting Related Relief* [Docket No. 123] (the "**Exclusive Banker Retention Order**") approving the Exclusive Banker Retention Application and the Debtor's exclusive employment and engagement of Raymond James in accordance with the terms and conditions of Raymond James's Engagement Letter Agreement.

5. Since October 3, 2024, Raymond James has and continues to faithfully discharge its duties as the Debtor's exclusive investment banker by, among other things, launching the marketing process on October 31, 2024, and contacting not less than 125 interested parties, including both strategic and financial investors.  Raymond James's robust marketing efforts span the globe, including North America, Europe, Asia and elsewhere.  Over the course of the marketing process, Raymond James has worked tirelessly with the Debtor, its prepetition lender, its official committee of unsecured creditors, interested parties and each of their professionals to ensure that the sale process maximizes value and remains on track with the parties' expectations.

6. As a direct result of Raymond James's global efforts directed to both strategic and financial purchasers, fruitful discussions are underway with a number of parties, seven indications

---

[1] "During the Term, the Company will promptly furnish to Raymond James the names and contact information of all third parties with which the Company… has during the Term, discussions or contacts concerning a potential Transaction, including, to the extent available, copies of any proposed terms regarding a potential Transaction communicated by any such Third Party. […] During the Term, the Company will keep Raymond James promptly apprised of any Transaction negotiations or consummation occurring without Raymond James' direct involvement." Engagement Letter Agreement ¶ 1(c).

3

of interest have been received to date, and Raymond James continues its efforts to maximize value in this process.

7. On February 13, 2025, the Debtor filed the Supplemental Banker Retention Application seeking to retain BDA as its supplemental investment banker, specifically as to potential bidders in Europe and South Asia. The Debtor did not obtain Raymond James's consent to modify the scope or nature of its retention.

8. Raymond James is concerned about the negative impact an additional banker will have on the process presently underway. First, adding a second banker will confuse the marketplace regarding the sale process. Two investment bankers will be in the market engaging with potentially interested parties with risks of overlap and redundant efforts. Second, Raymond James has prepared marketing materials that cannot be used by another investment bank. *See* Engagement Letter Agreement ¶ 8(c). Third, it is unclear what marketing materials a second investment bank will use or whether they will communicate different data to potentially interested parties. Fourth, adding a second investment banker will require duplication of effort by the Debtor's prepetition lender and the creditors committee who presently engage with Raymond James weekly. These constituencies will likely require the same level of interaction with a second investment bank, further burdening the estate with at least $1,000,000 of additional administrative expenses in addition to the past due administrative expenses that remain outstanding and unpaid. This would diminish estate recoveries by a meaningful amount. Fifth, two investment banks running dual sales processes would generate mass confusion in an auction, with two investment banks running the auction, interacting with buyers, communicating with the creditors committee and the Debtor's prepetition lender, thereby jeopardizing buyer confidence in the process and outcome.

9.     For the foregoing reasons, Raymond James is concerned that introducing a second banker is detrimental to the sale process in addition to violating the terms of the Raymond James's retention.  To the extent the Court elects to grant the Supplemental Banker Retention Application, Raymond James requests that the proposed order be clarified to recognize that (i) Raymond James is the lead investment banker in this process; and (ii) any payment to BDA should be made only after irrevocable satisfaction of all amounts due to Raymond James under Raymond James's Engagement Letter Agreement.

10.     To avoid confusion for bidders and other interested parties in this process, Raymond James seeks to clarify for the Court (and to the market) that it remains the *lead* investment banker for the marketing and sale of the Debtor's assets and that potential bidders should engage with Raymond James, if not already doing so.

11.     To ensure continuity of the ongoing and robust marketing process and to avoid any additional market confusion amongst potential bidders, Raymond James fully expects to continue leading the marketing process with BDA taking on a supplemental role—as intended—should the Court authorize BDA's retention.  This includes Raymond James continuing to lead any bidder interactions with the Debtor and discussions with bidders regarding potential terms and conditions of a purchase agreement.  In this regard, Raymond James expects full cooperation from BDA to follow Raymond James's lead—to report to and work collaboratively under Raymond James's guidance—for the duration of the marketing process.  In the event BDA's retention is approved, Raymond James will make itself available to confer with BDA at the earliest convenience to establish appropriate protocols to minimize market confusion and avoid duplication of efforts.

12.     Lastly, consistent with the Debtor's affirmation in the Supplemental Banker Retention Application, Raymond James does not expect any deviation in its fees and

compensation. *See* Supplemental Banker Retention Application ¶ 3. Pursuant to the terms of its Engagement Letter Agreement, which was approved by the Exclusive Banker Retention Order, Raymond James is entitled to receive all of its fees and compensation out of the proceeds of the sale of the Debtor's assets, immediately upon or contemporaneously with closing. Nothing in the Supplemental Banker Retention Application, BDA's engagement letter or the retention of BDA should change Raymond James's entitlement, and Raymond James's fees and expenses should be satisfied in full in cash prior to any payment to BDA.

13. To the extent the Court deems necessary, Raymond James is available to answer any questions that the Court may have regarding this Statement.

Dated: February 20, 2025

                                        */s/ Oscar N. Pinkas*
Alan J. Brody
GREENBERG TRAURIG LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Tel: (973) 443-3543
Fax: (973) 295-1333
Email: BrodyA@gtlaw.com

- and -

Oscar N. Pinkas, Esq.
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200
Fax: (212) 801-6400
pinkaso@gtlaw.com

*Counsel for Raymond James & Associates Inc.*