**Order Filed on February 26, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 24-19611 |
| **NOSTRUM LABORATORIES, INC.,** | Chapter: 11 |
| Debtor. | Judge: John K. Sherwood |

## DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY

**DATED: February 26, 2025**

Honorable John K. Sherwood
United States Bankruptcy Court

| | |
|---|---|
| Debtor: | Nostrum Laboratories, Inc. |
| Case No.: | 24-19611 |
| Caption: | **DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY** |

## **INTRODUCTION**

On February 5, 2025, the Court conducted an evidentiary hearing on an emergent motion filed by Debtor Nostrum Laboratories, Inc. ("Debtor"). [ECF No. 210]. The Debtor sells pharmaceutical products, including branded and generic drugs. One of the Debtor's largest customers is McKesson Corporation ("McKesson"). The motion originally involved claims against McKesson for (1) violations of the stay under §§ 362(a)(3), (6) & (7) and 362(k); (2) damages under § 362(k) for alleged willful violation of the stay; (3) turnover of funds under § 542(a)-(b); (4) specific performance of contracts; and (5) damages for alleged improper triangular setoff. Much of the motion was devoted to allegations that McKesson improperly withheld funds due to the Debtor to offset amounts owed to RxCrossroads and ClarusONE, two affiliates of McKesson that provide accounts receivable management, distribution, and related services to the Debtor. At the hearing, it was established that these claims were no longer at issue because McKesson was not holding back funds due to the Debtor on account of amounts owed by the Debtor to RxCrossroads and ClarusONE. Unfortunately, the parties and the Court wasted significant time addressing stay violation and triangular setoff issues that were inconsequential.

What remains is the Debtor's request to compel McKesson to pay it for products it delivered pre- and post- petition net of various chargebacks and credits. Essentially, the Debtor wants McKesson to pay for products that it has received in the ordinary course so that it can pay its expenses in this Chapter 11 case. The Debtor contends that McKesson has gone overboard on its assertion of chargebacks and reserves to the point that it is unwilling to pay for any of the inventory that the Debtor has delivered in recent months. The Debtor correctly points out that it was not until this motion was filed that McKesson begrudgingly made a partial payment of

Case 24-19611-JKS    Doc 283    Filed 02/26/25    Entered 02/26/25 15:00:59    Desc Main
Document    Page 3 of 9

Page 3
Debtor:       Nostrum Laboratories, Inc.
Case No.:     24-19611
Caption:      **DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY**

$506,000. This is the only payment made by McKesson in the over 4 months that this case has been in bankruptcy. The Debtor notes that McKesson's average <u>monthly</u> payment to the Debtor was approximately $740,000 in 2023 and approximately $663,000 in 2024. There is no doubt that McKesson does not want to pay the Debtor for the products it has been ordering since this bankruptcy case was filed even though the Debtor has continued to ship products to McKesson.

McKesson contends that its chargebacks are allowed under its contract with the Debtor. The Court will try to address the merits of McKesson's chargeback and other claims in some detail below. But first, McKesson's argument that these claims cannot be brought as a contested matter and instead must be brought in an adversary proceeding under Bankruptcy Rule 7001 deserves some attention. In hindsight, a one-day hearing on the merits of this somewhat complicated contract dispute without the benefit of discovery and pre-trial motion practice was not a good idea. It is also worth noting that Mr. Newman, the Debtor's new attorney, had only been in the case for 3 weeks before the hearing commenced on February 5, 2025. This was a hard case for the Debtor to prepare because a large part of the Debtor's accounts receivable management is performed by third parties who are affiliates of McKesson. No witnesses were presented from these third parties (CalrusONE and RxCrossroads).

The accounts receivable reconciliation process is a moving target because McKesson has taken credits for both actual losses, such as returns and contract chargebacks, and anticipated losses based on inventory that it has on hand but does not think it will sell for a variety of reasons, including the Debtor's bankruptcy. The parties agree that this is an "ongoing continuous process."

Page 4

| | |
|---|---|
| Debtor: | Nostrum Laboratories, Inc. |
| Case No.: | 24-19611 |
| Caption: | **DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY** |

## ANALYSIS

The Debtor's only witness was Mr. Sabale who has been the Debtor's Controller since 2019. He testified that McKesson owes the Debtor at least $2.3 million based on current invoices of $3,970,554 and estimated chargebacks of $1,588,222. He further noted that even McKesson's portal showed that the Debtor was owed over $1.2 million as of January 2, 2025. (Sabale Declaration, Exs. E and F). He confirmed that McKesson's return policy applied to the transactions between the parties and that it allowed for the return of excess inventory. Mr. Sabale testified that RxCrossroads manages the Debtor's receivables daily, including the adjustments to the receivables based on credits or chargebacks due to the customer. Where RxCrossroads does not know how to handle a proposed adjustment, it consults with the Debtor and a negotiation develops with McKesson. For example, Mr. Sabale testified that the Debtor and McKesson have been involved in a dispute over "Service Level Penalties" in the amount of approximately $4.3 million for a year. Despite disagreement between the parties over this charge, McKesson continued to place orders with the Debtor and, until recently, make regular payments.

Exhibit A to the Declaration of McKesson's Cameron Wilson [ECF No. 248] purports to show McKesson's view on the accounts between the parties as of January 29, 2025. This Exhibit was important, but confusing as presented by Mr. Wilson. The Court's attempt to give a clearer picture is set forth in the table below.

Page 5
Debtor:     Nostrum Laboratories, Inc.
Case No.:   24-19611
Caption:    **DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY**

| | |
|---|---|
| **$3,066,288** | Invoice amount for products delivered by Debtor to McKesson (shipped within the last 120 days). |
| (1,473,683) | Credit to McKesson for "contract chargeback." According to McKesson this is for losses to McKesson resulting from sales to its customers at prices lower than it paid to the Debtor because the Debtor had made direct deals with these customers at a discounted price. Though this seems like an absurd way of doing business, the Debtor presented no evidence to challenge this credit. |
| (456,308) | Credit to McKesson for "3rd party returns." These are returns to McKesson from its customers. The Debtor did not analyze this credit. |
| (169,101) | Credit to McKesson for supplier credit to customer. The Debtor was not able to comment on this. McKesson explained that this was a credit that was based on the Debtor's relationship with the customer. |
| (6,470) | Credit to McKesson for "Quantity DM." The Debtor had no comment on this item. McKesson testified that this was a type of return transaction. |
| **$960,726** | Payable due to Debtor less credits. |
| (293,393) | Monies due from Debtor to McKesson for fees for service incurred in the ordinary course of business. The Debtor did not dispute that these were due. |
| **$667,333** | Amount due to Debtor per McKesson's books and records. |
| (318,716) | Estimated chargeback based on 43% "WAC Spread" on inventory on hand in the amount of $743,912. |
| (355,574) | Estimated chargeback for slow moving and unsalable inventory. |
| **($6,957)** | Debtor owes McKesson |

Exhibit A as summarized above shows that McKesson purchased over $3 million of products from the Debtor over the 120-day period before the hearing, did not pay for any of it, and that after actual and expected credits and chargebacks, the Debtor owes McKesson $6,957. This accounting seems ridiculous from the Debtor's point of view and is quite different from the

Page 6
Debtor:      Nostrum Laboratories, Inc.
Case No.:    24-19611
Caption:     **DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY**

"McKesson portal" that the Debtor had access to through RxCrossroads. In the past, the Debtor would use screen shots from the portal to project how much it was going to be paid by McKesson and when. Mr. Sabale testified that these projections were usually accurate. Bryan Thompson who testified on behalf of McKesson confirmed that McKesson put the information into the portal after taking deductions into account. According to Exhibit E to Mr. Sabale's Declaration, the portal projected that the Debtor would receive over $1.2 million in January of 2025, but McKesson paid only $506,000.

Another Exhibit that was addressed at some length was Exhibit B to Mr. Thompson's Declaration. [ECF No. 249]. According to the witness, this Exhibit showed that <u>after chargebacks and credits</u> approximately $22,000 was due to the Debtor in the 1-30 day column, over $416,00 in the 31-60 day column, over $1 million in the 91-180 day column, and approximately $1.7 million in the 181-360 day column. As to these last 2 columns totaling approximately $2.7 million, Mr. Thompson could not explain why these amounts had not been paid to the Debtor. The Debtor submitted its version of the status of the accounts receivable from McKesson with the Declaration of Mr. Sabale. [Ex. F, ECF No. 210, p. 36 of 41]. As set forth above, this Exhibit showed current invoices of $3,970,554 less *estimated* proper adjustments by McKesson in the amount of $1,588,222 with a net due to the Debtor in the amount of $2,382,332. Neither party proved what was owed by McKesson on the current or aged accounts receivable due largely to the short notice/limited scope of the hearing. Also, the Debtor was focused on the McKesson portal and alleged that the information in the portal was controlled by McKesson and its affiliate, RxCrossroads.

Case 24-19611-JKS    Doc 283    Filed 02/26/25    Entered 02/26/25 15:00:59    Desc Main
Document    Page 7 of 9

Page 7
Debtor:      Nostrum Laboratories, Inc.
Case No.:    24-19611
Caption:     **DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY**

Thus, the main focus of this decision is on McKesson's "Exhibit A" which is summarized in the table above. That Exhibit purports to show McKesson's view of the payable as of January 29, 2025. It acknowledges that after a host of ordinary chargebacks and credits, McKesson owes the Debtor $667,333. Though these ordinary chargebacks and credits seem high, the Debtor was unable to prove (given the circumstances) that they were improper.

The only issue the Court can address is McKesson's "expected chargebacks" ($318,716) and credit for "slow moving and unsalable inventory" ($355,574). At the hearing, McKesson acknowledged that these adjustments were not in the ordinary course but were taken due to the Debtor's bankruptcy and precarious financial condition. McKesson's affiliates, RxCrossroads and ClarusONE, are already at risk for unpaid claims in this bankruptcy case. McKesson is not inclined to add more risk by going negative with the Debtor on its own behalf. But McKesson agrees that it has $743,912 of "salable inventory on hand" and has asserted that it anticipates that it will incur $318,716 of additional charges to sell through this inventory—like the $1,473,683 of "contract chargeback[s]" described in the table above. This is based on a 43% discount rate on the price that McKesson is paying the Debtor for the inventory which, according to McKesson, is based on reliable historical data. On top of that, McKesson is taking a $355,574 credit for slow moving and unsalable inventory that will likely have to be returned to the Debtor. Even if these two premature chargebacks (totaling $674,290) come to pass, the Court expects that some of this loss will be offset by the value of the inventory. If that is the case, why is McKesson not paying any of the $667,333 that it agrees that it would owe in the ordinary course?

Case 24-19611-JKS    Doc 283    Filed 02/26/25    Entered 02/26/25 15:00:59    Desc Main
Document    Page 8 of 9

Page 8
Debtor:     Nostrum Laboratories, Inc.
Case No.:   24-19611
Caption:    **DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY**

## CONCLUSION

The Debtor filed the motion before the Court in an act of desperation because McKesson, one of its largest customers, had stopped paying its invoices. The motion caused McKesson to release $506,000 on an interim basis. There is no doubt that McKesson is taking a conservative approach towards paying its invoices because it is concerned about the Debtor's viability. The fact that McKesson continued to order products post-petition, which apparently it did not expect to pay for, is troubling. The unfairness of McKesson's approach to the estate and its creditors is obvious. The Debtor is paying for people, supplies, rent, etc. to produce these products. If McKesson wanted to eliminate its risk of doing business with the Debtor, it could have stopped placing orders when the bankruptcy case was filed. But the Court appreciates that the Debtor would not want to lose McKesson as a customer (and McKesson may not want to lose the Debtor as a supplier). The Debtor is in the process of selling its businesses as going concerns and having McKesson as a customer probably adds value. Hopefully, McKesson will stay the course while the Debtor runs its sale process for the benefit of its creditors.

Due to the limited record here, the Court must accept almost all of McKesson's chargebacks and credits on Exhibit A to arrive at an amount that is now payable to the Debtor on account of over $3 million of delivered products. The only exception is for the $355,574 of "slow moving & unsalable inventory" which the Court believes can be returned to the Debtor to satisfy this chargeback—as opposed to McKesson paying cash. Thus, the final decision based on the record is: $667,333 (due per McKesson) less $318,716 (expected chargebacks per McKesson) = $348,617 due to the Debtor as of January 29, 2025. Again, this is an emergent decision on a limited record. The Court has done its best to evaluate the evidence and see if any funds can be released

| | |
|---|---|
| Page 9 | |
| Debtor: | Nostrum Laboratories, Inc. |
| Case No.: | 24-19611 |
| Caption: | **DECISION RE: DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY** |

to the Debtor to sustain its operations while the parties move towards a sale of the business soon. More time and evidence are needed to sort out the overall status of the Debtor's receivables due from McKesson, and if a resolution cannot be reached, an adversary proceeding would be appropriate. The parties' rights in such a proceeding are fully preserved. An order memorializing this decision will be entered.