| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(C)<br><br>Julie M. Murphy<br>Daniel Pereira<br>Stradley Ronon Stevens & Young, LLP<br>457 Haddonfield Rd., Suite 100<br>Cherry Hill, New Jersey 08002<br>T: (856) 321-2409<br>F: (856) 321-2415<br>E-Mail: jmmurphy@stradley.com<br>            dpereira@stradley.com<br><br>*Attorneys for Citizens Bank, N.A.* | |
| In re:<br><br>NOSTRUM LABORATORIES, INC.,<br><br>                                          Debtor. | Case No. 24-19611 (JKS)<br><br>Chapter 11<br><br>Requested Hearing Date:<br>(*emergency application pending to expedite hearing date*)<br><br>Objection Deadline:<br><br>Judge: Hon. John K. Sherwood |

**EMERGENCY MOTION OF CITIZENS BANK, N.A. FOR AN ORDER (I) DESIGNATING AN OFFICER OF THE DEBTOR TO COMPLETE THE SALE PROCESS AND MANAGE THE DEBTOR, (II) DIRECTING NIRMAL MULYE TO CEASE EXERCISING ANY CONTROL OR AUTHORITY OF THE DEBTOR, (III) DIRECTING NIRMAL MULYE TO CEASE INTERFERENCE WITH THE SALE PROCESS, (IV) COMPELLING THE DEBTOR TO CONSUMMATE THE SALE OF ITS ASSETS IN ACCORDANCE WITH THE TERMS OF THE APPLICABLE ASSET PURCHASE AGREEMENTS AND THE APPLICABLE SALE ORDERS, AND (V) DISGORGING THE PAYMENT TO ENEM NOSTRUM REMEDIES PVT., LTD.**

Citizens Bank, N.A. ("Citizens"), by and through its undersigned counsel, hereby moves on an emergent basis to compel the Debtor to designate an officer of the Debtor to complete the sale process and manage the Debtor, directing Nirmal Mulye to cease exercising any control or authority over the Debtor, directing Nirmal Mulye to cease interference with the sale process, and compelling the Debtor to take all steps necessary to consummate the sale of its assets in accordance

with the terms of each applicable asset purchase agreement and as approved by the Court and to disgorge the payment made from the Debtor to Enem Nostrum Remedies Pvt., Ltd. on April 14, 2025. This relief is sought pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 4002. In support of this motion, Citizens respectfully represents as follows:

## **INTRODUCTION**

1. The Debtor's CEO once again reveals his unwillingness to fulfil his fiduciary duties to the constituents of the bankruptcy estate.

2. After completing an auction and moving this Court for approval of the results of that auction, which (together with a higher bid received at the Sale Hearing (hereinafter defined)) resulted in sales of the Debtors' assets to nine (9) parties, the Debtor's CEO has taken actions wildly inconsistent with his fiduciary duties, including to make payments to an insider that render the Debtor unable to meet its payroll obligations, leveling threats to undermine the sale efforts (including to direct the insider to withhold property of the Debtor, which the insider has been ordered by this Court to deliver) and generally being uncooperative in efforts to progress the consummation of the sale.

3. These actions violate the Debtor's fiduciary duties to the estate and its creditors, creates a scenario that jeopardizes the approved sales and opens the estate to liabilities.

4. The Debtor's CEO should be enjoined from further control over the Debtor, its operations and its finances, and from interference with the sale process.

5. The Designated Officer, Bernard Berk, should be empowered and directed to do the following: (a) execute any and all documents necessary and appropriate for the consummation of each approved sale, (b) direct the employees, officers, directors, affiliates and other debtor-related parties to take such actions that are necessary to consummate each approved sale, including without limitation, to provide each purchaser with the assets purchased in accordance with the

applicable asset purchase agreements and all related information, documentation, stability samples necessary to consummate the sales, (c) to direct counsel for the Debtor in the execution of his duties, and (d) approve any budget and each expenditure of the Debtor, in consultation of with Citizens.  These powers should be exclusively vested in Mr. Berk.

6. Insider payments, delay and interference will result in destruction of value that will harm all creditors of the Debtor and should not be permitted by the Court.

## FACTUAL BACKGROUND

7. On September 30, 2024 (the "Petition Date"), Nostrum Laboratories Inc. ("Nostrum" or the "Debtor") filed a voluntary petition for relief (the "Petition") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On October 21, 2024, the United States Trustee appointed an Official Committee of Unsecured Creditors in this case (the "Committee").

8. The Debtor has retained three separate firms as counsel in this case. *See*, Petition (Docket No. 1), Application for Retention of Ansell Grimm & Aaron, P.C. (Docket No. 69), and Application for Retention of Broege, Neumann, Fischer & Shaver, LLC (Docket No. 224).

9. On November 6, 2024, this Court entered the Order (I) authorizing the Employment and Retention of Raymond James & Associates, Inc. as Investment Banker for the Debtor, effective *nunc pro tunc* as of the Petition Date, (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-1, and (III) Granting Related Relief (Docket No. 123) (the "RJ Retention Order").

10. On December 11, 2024, this Court entered the Final Order (I) Authorizing the Debtor to Utilize Cash Collateral to (A) Pay Postpetition Associates' Wages, Salaries, Other Compensation and Reimbursable Expenses, (B) Continue the Associate Benefits Programs, and (C) Continue to Pay Key vendors; and (II) Granting Related Relief (Docket NO. 186) (the "Final

3

Order").

11. On December 27, 2024, the Debtor's landlord, Tak Properties LLC, filed a Motion for Order Compelling Debtor to Pay Post-Petition Rent and Perform Other Obligations Owed Under Unexpired Lease of Nonresidential Real Property (Docket No. 198), which has not yet been resolved.

12. On January 21, 2025, the Committee filed the Motion for an Order Authorizing the Committee to Market the Debtor's Assets for Sale in a Joint Capacity with the Debtor and Approving Bidding Procedures (Docket No. 229) (the "Committee Bidding Procedures Motion").

13. On January 27, 2025, Citizens filed a Default and Remedies Notice, notifying the Debtor, the United States Trustee and the Committee of the occurrence of an Event of Default under the Cash Collateral Order as a result of the failure of the Debtor to file a motion to designate a stalking horse and/or approve bidding procedures acceptable to Citizens on or prior to January 24, 2025 (the "Default and Remedies Notice").

14. On February 4, 2025, Citizens filed the Motion to Compel the Debtor to Designate an Officer in Charge of the Sale Process or, in the Alternative to Set a Hearing Date for a Re-Notice of Citizens Motion for the Appointment of a Chapter 11 Trustee (Docket Entry No. 256) (the "Re-Noticed Trustee Motion").

15. On February 7, 2025, the Court entered an order granting the Re-Noticed Trustee Motion in part and requiring that the Debtor designed an officer in charge of the sale process efforts (the "Designated Officer") to, among other things, provide documentation and information to progress the sale of the Debtor's assets. See, Docket Entry No. 256.

16. The Debtor designated Bernard Berk, the Debtor's President and Vice Chairman, as the Designated Officer.

17. As of February 14, 2025, the Court approved the bidding procedures (the

"Bidding Procedures") scheduling an auction for April 1, 2025 and an outside closing date on the sale of any assets by April 18, 2025.

18. On March 25, 2025, Enem Nostrum Remedies Pvt. Ltd. ("Enem") filed a cure objection, alleging a prepetition claim of more than $4MM and post-petition claim of more than $1MM, even though Enem has been paid regularly throughout the case. (Docket No. 325).

19. On March 31, 2025, Citizens filed a Motion to Expunge Claims of Enem (Docket No. 331) (the "Motion to Expunge"), asserting, among other things, that Enem is an insider, that it failed to file a proof of claim and that it failed to attach any information support its alleged pre- and post-petition claims.

20. The Court granted Citizens Motion to Expunge on April 11, 2025 (Docket No. 365).

21. As a result of the entry of the Court's April 11, 2025 order, Enem has no claim against the estate.

22. On March 26, 2025, Citizens filed a Supplemental Response to its Re-Noticed Trustee Motion, requesting that the court direct the Debtor's CEO not to attend the auction scheduled April 1, 2025, which was resolved by consent order on March 28, 2025 (the "Auction Consent Order").

23. On April 1, 2025, an auction was held at the offices of Raymond James.

24. On April 4, 2025, the Debtor filed a motion to approve sales of the Debtor's assets to the successful bidders from the auction (Docket No. 337) (the "Sale Motion").

25. The Sale Motion avers, among other things, that

(a) "The sale process. . . resulted in the highest or otherwise best value for the Sale Assets, was in the best interests of the Debtor, their creditors and all parties in interest, and any other transaction would not have yielded as favorable of a result." *See*, Sale Motion, paragraph 15.

5

(b) "Approval of the Motion at this time is in the best interests of the Chapter 11 estate creditors and other parties-in-interest." *Id.*, at paragraph 17.

26. On April 8, 2025, the Court held a hearing (the "Sale Hearing") during which the Court approved the sale of substantially all of the Debtors' assets to (a) the successful bidders and (b) a new bidder, who submitted a higher and better bid at the hearing.

27. On April 11, 2025, Citizens, Raymond James and the Committee were informed that the Debtor's CEO has either (a) instructed the Debtor's counsel to cease any activities with respect to moving forward with the sale of the Debtor's assets as proposed in the Sale Motion and approved by the Court at the Sale Hearing or (b) refused to consent to filing of the Sale Orders when such consent was requested by counsel.

28. While sale orders have subsequently been filed for most of the sales approved at the Sale Hearing, Dr. Mulye's instructions created hours of distraction that drew the Debtor's resources away from progressing the closing of the sales.

29. On April 15, 2025, Citizens was informed that the Debtor was unable to retain employees because it was unable to assure employees that the payroll due the week of April 18, 2025 would be made.

30. Citizens was also informed that on April 14, 2025 – prior to any budget being presented to Citizens for the week - Dr. Mulye instructed that a payment of $60,000 be made to Enem, allegedly on account of post-petition services.[1]

31. This payment directly results in the Debtor's inability to make payroll.

32. When disclosed, multiple of Debtor's employees and officers threatened to resign.

33. The Debtor has been operating on a skeleton crew and cannot afford to lose more

---

[1] Notably, Enem did not appear at the hearing to substantiate its alleged post-petition claim of more than $1 million, nor did Enem file a proof of claim.

employees prior to the consummation of the sales approved by the Court.

34. When asked whether Dr. Mulye would seek return of the funds or otherwise make assurances that payroll would be paid, the request was met with a thinly veiled threat that Enem may not release stability samples it holds and is required to transfer as a part of the sale.

35. These threatened actions would be in direct contravention of the multiple orders entered approving the sales, which each provide, in pertinent part:

> "The Debtor, together with all entities in possession of property of the Debtor's estate, including, without limitation, the inventories and works-in-progress relating to the Sale Assets (including raw materials and active pharmaceutical ingredients), all stability samples, batches, data protocols and other documentation with respect to stability testing for the Sale Assets, or information necessary to consummate the Sales including, but not limited to, **EnEm Nostrum Remedies, Pvt. Ltd., the Debtor and each of their respective representatives including, but not limited to, Nirmal Mulye, Bernard Berk, James Grainer, and Shraddha Dhamankar shall surrender possession of such property and cooperate in all respects with the Debtor, the Purchasers, the Committee and Raymond James in order to effectuate a timely closing of the Sales including, but not limited to, by providing all information necessary to consummate the Sales**."

See, e.g., Docket No. 375, Paragraph 4.

36. Each of the asset purchase agreements that are the subject of the Sale Motion and Sale Hearing requires that a closing occur no later than April 18, 2025, which is three business days away.

37. Should the sales not close by April 18, 2025, and such date has not been extended by agreement of the Debtor, the respective purchaser and Citizens, purchasers will have the ability to terminate the asset purchase agreements.

38. Delay and interference by the Debtor's CEO harm the estate, harm the Debtor, imperil the only avenue to value and should not be tolerated by the Court.

**LEGAL ARGUMENT**

## The Court May Compel The Debtor to Cooperate in the Sales Process and May Enforce the Sale Orders

39. Pursuant to Section 1107 of the Bankruptcy Code, a debtor-in possession is charged with the duties of a trustee in the case, including (with limited exceptions) those set forth in Sections 1106 and 704(a) of the Bankruptcy Code. The Bankruptcy Code imposes a duty on debtors-in-possession to disclose information, including information requested by a party in interest. *See* 11 U.S.C. § 1107.

40. Pursuant to Section 105 of the Bankruptcy Code, the Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

41. Moreover, a debtor-in-possession owes fiduciary duties to its creditors and the estate. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998). These duties include the duty of care to safeguard estate assets, the duty of loyalty and the duty of impartiality. The rights of a debtor-in-possession are not absolute and may be forfeited if the debtor is incapable of fulfilling its fiduciary obligations. *See In re Morningstar Marketplace, Ltd.*, 544 B.R. 297, 303 (Bankr. M.D. Pa. 2016).

42. Numerous courts have found that the Debtor is obligated to cooperate in the administration of the estate and that the debtor's obligation to cooperate is broad. *See, In re Cambridge Analytica LLC*, 596 B.R. 1, 3 (Bankr. S.D.N.Y. 2019); *see also*, *In re Weisel*, 173 F. 718 (E.D. Pa. 1909).

43. Furthermore, under Fed. R. Bankr. P. 9001(5), the Court may designate an officer or any other person in control of the Debtor as the Debtor's designated representative, to the extent the Debtor refuses to do so.

44. While the bulk of the caselaw speaks to a debtor's obligation to cooperate with trustee that has been appointed, and no trustee has yet been appointed in this case, here, the Debtor's management appears to be uncooperative even with its own, estate-retained professionals

8

and taking active measures that undermine the Debtor and its objectives.

45. As this Court recognized on the record at a hearing on April 15, 2025, Dr. Mulye's conflicts should exclude him from any further involvement in the Debtor's management, including its finances. Such conflicts clearly render him unable to discharge his fiduciary duties.

46. Conflicts of interest on the part of management that interfere with its ability to fulfill fiduciary duties to the debtor, self-dealing, waste and squandering of corporate assets likewise constitute grounds for the appointment of a trustee. *Intercat, Inc.*, 247 B.R. at 920-21; *In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005).

### Dr. Mulye Should Be Enjoined from Controlling the Debtor or the Sale Process in Any Fashion and the Designated Officer Should be Vested with Sole Control

47. Here, Dr. Mulye has elected to pay an insider with unsubstantiated claims, while failing to ensure that sufficient cash remains on hand for the Debtor to make a critical payroll and compensate employees that are doing the work of consummating the sales approved by the Court.

48. As Mulye is incapable of making decisions that are in the best interests of the estate and as Dr. Mulye's continued involvement in the Debtor's management creates chaos and distraction, he should be enjoined from continuing to manage the Debtor in any fashion, including directing employees and directors or counsel. That authority should be vested exclusively in the Designated Officer.

49. The Designated Officer should be vested with the authority to take exclusive control of the Debtor, to progress the sale process and consummate the sales, to direct counsel, to approve the budget (in consultation with Citizens) and take any other corporate actions.

### This Court Should Enforce the Sale Orders and Require Cooperation of Mulye, Enem and All Other Parties in Control of Debtor Property

50. Further, the Court unquestionably has the authority to enforce its own orders, including the Sale Orders entered at Docket Entry Nos. 373, 374, 375 and 376. Each of the Sale

Orders requires cooperation and provision of information, documentation and property of the Debtor.

51. The Sale Orders require, among other things, cooperation and surrender of property of the estate. Dr. Mulye, who has put himself forth as the sole representative of Enem, should be compelled to comply, and to direct Enem to comply, with the Sale Orders.

**The Payment to Enem Should be Disgorged**

53. Under Section 105(a) this Court has the authority to enforce its own orders, including the order entered granting the Motion to Expunge. See, 11 U.S.C. 105(a) (a court is not precluded from takin action necessary or appropriate to enforce or implement court orders).

54. In granting the Motion to Expunge, this Court found sufficient grounds to disallow Enem's prepetition claim and its objection to the cure notice, which listed the cure amount due to Enem as $0.

55. The Court may order disgorgement to address breaches of fiduciary duty. *In re JNL Funding Corp.*, 620 B.R. 25 (Bankr. E.D.NY. 2020) (citing *In re Food Mgmt. Grp., LLC,* 380 B.R. 677, 713 (Bankr. S.D.N.Y. 2008).

56. Here, Dr. Mulye, the CEO of the Debtor who authorized the payment to Enem, has also represented himself as the sole officer representing Enem in the bankruptcy proceedings.

57. Dr. Mulye authorized the payment to Enem prior to providing Citizens with the weekly budget, after the Debtor and Citizens agreed to modify the cash collateral order to require Citizens approval of the budget, after the Court granted the Motion to Expunge and at a time when he knew or should have known that the Debtor would have insufficient cash on hand after making such payment to honor its payroll obligations.

58. Dr. Mulye authorized the payment to Enem, an entity owned by his family members, and an insider of the Debtor, at a time when every available employee is working tirelessly to consummate the sales, knowing that such funds would render the Debtor unable to pay them.

59. The payment to Enem is a clear violation of Dr. Mulye's fiduciary duties and should be disgorged so that payroll can be paid.[2]

## REQUEST FOR WAIVER OF MEMORANDUM OF LAW

60. Citizens requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which Citizens relies is set forth herein and this motion does not raise any novel issues of law.

## CONCLUSION

Citizens respectfully requests that this Court enter an Order vesting in the Designated Officer the sole control of management of the Debtor, including over finances (with the consent of Citizens) and over completion of the sale process, directing Nirmal Mulye to cease exercising any control or authority over the Debtor, directing Nirmal Mulye to cease interference with the sale process, and compelling the Debtor to take all steps necessary to consummate the sale of its assets in accordance with the terms of each applicable asset purchase agreement and as approved by the Court and disgorgement of the payment to Enem.

STRADLEY, RONON, STEVENS
& YOUNG, LLP

Date: April 15, 2025

*/s/   Julie M. Murphy*
Julie M. Murphy, Esquire
Daniel M. Pereira, Esquire

Stradley Ronon Stevens & Young LLP
457 Haddonfield Road, Suite 100
Cherry Hill, NJ  08002
Tel: (856) 321-2409
Fax: (856) 321-2415
E-Mail: jmmurphy@stradley.com
           dpereira@stradley.com

---

[2] Citizens reserves all of its rights to seek disgorgement of other fees paid to or for the benefit of insiders during the pendency of this Case.

6150332