| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-2(C)<br><br>Julie M. Murphy<br>Daniel Pereira<br>Stradley Ronon Stevens & Young, LLP<br>457 Haddonfield Rd., Suite 100<br>Cherry Hill, New Jersey 08002<br>T: (856) 321-2409<br>F: (856) 321-2415<br>E-Mail: jmmurphy@stradley.com<br>         dpereira@stradley.com<br><br>*Attorneys for Citizens Bank, N.A.* | |
| In re:<br><br>NOSTRUM LABORATORIES, INC.,<br><br>                                    Debtor. | Case No. 24-19611 (JKS)<br><br>Chapter 11<br><br>Requested Hearing Date:<br><br>Objection Deadline:<br><br>Judge: Hon. John K. Sherwood |

**RESPONSE OF CITIZENS BANK, N.A.**
**(I) IN SUPPORT OF DEBTOR'S MOTION PURSUANT TO SECTIONS 105(A), 363 and 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006 FOR AN ORDER APPROVING THE SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES TO PRASCO, LLC, AND**
**(II) IN OPPOSITION TO THE LIMITED OBJECTION TO PROPOSED MOTION TO APPROVE SALE OF ASSETS TO PRASCO FILED BY WATERFORD BANK, N.A.**

Citizens Bank, N.A. ("Citizens"), by and through its undersigned counsel, hereby submits this Response (I) in Support of Debtor's Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy rules 2002, 6004 and 6006 for an Order Approving the Sale of the Debtor's Assets Free and Clear of Liens, Claims and Encumbrances to Prasco, LLC (Docket No. 431) (the "Prasco Sale Motion"), and (II) in Opposition to the Limited Objection to Proposed Motion to Approve Sale of Assets to Prasco, filed by Waterford Bank, N.A. (Docket No. 436) (the

1

"Waterford Objection"), and in support thereof, respectfully represents as follows:

## INTRODUCTION

1. As set forth on the record before this Court at the hearing on May 15, 2025, Citizens supports the sale proposed by the Prasco Sale Motion subject to Citizens' receipt of one hundred percent of the sale proceeds allocated for the sale of the equipment collateral for which Citizens is the sole secured party.

2. Citizens objects to the allegations contained in the Waterford Objection that would surcharge the equipment collateral for any reason whatsoever, including on the following grounds: (a) no other party is entitled to the proceeds of the equipment collateral, (b) the Debtor's estate has waived the right to surcharge Citizens' collateral, which waiver is binding on parties in interest, (c) Citizens has no obligation under applicable law to remove or pay for the removal of the opioid inventory unlawfully stored by the Debtor for periods leading up to the filing of the Bankruptcy Case, and (d) no equitable reason supports requiring Citizens to contribute for the destruction costs associated with the opioid materials, particularly in light of Citizens' funding of the case, which includes nearly $2.65 million in a carve-out, more than $80,000 in mortgage payments to Waterford Bank, N.A., and payroll for the Debtor's employees, including those at the Debtor's Ohio facility.

3. Waterford Bank's objection should be overruled and the sale approved on the terms set forth in the Prasco Sale Motion.

## FACTUAL BACKGROUND

4. By the Prasco Sale Motion, the Debtor seeks the Court's approval of the sale of two of the Debtor's assets: real property located in Bryan, Ohio and equipment located in Bryan, Ohio.

5. Purchaser, Prasco, LLC ("Prasco") has made closing on the sale contingent on the

continuous employment by the Debtor of the workforce at the Ohio facility.

6. Notably, the Debtor has not secured Citizens' agreement to utilize Cash Collateral to pay payroll past May 16, 2025.

7. The real property consists of parcels encumbered by a mortgage in favor of Waterford Bank and unencumbered parcels.

8. The equipment is solely encumbered by the lien of Citizens Bank, N.A. ("Citizens"). No other party, including Waterford, claims any security interest in the equipment.

9. In addition, Citizens has a blanket lien on all of the Debtor's pre-and post-petition assets as set forth in full in, among other things, that certain (a) *Final Order (I) Authorizing the Debtor to Utilize Cash Collateral to (A) Pay Postpetition Associates' Wages, Salaries, Other Compensation and Reimbursable Expenses, (B) Continue the Associate Benefits Programs, and (C) Continue to Pay Key Vendors; and (II) Granting Related Relief* [Docket No. 186] (as amended, the "Cash Collateral Order"), (b) the Stipulated Order Post-Petition Debtor-in-Possession Financing dated April 17, 2025 [Docket No. 406] (the "DIP Order").[1]

10. Pursuant to the Cash Collateral Order and the DIP Order, in exchange for Citizens agreeing to (a) pay the Carve-Out, which financed the estate professionals and the Debtor's investment banker, and (b) allow the use of its Cash Collateral (as defined in the Cash Collateral Order), Citizens received certain Replacement Liens, Adequate Protection Superpriority Liens and other rights, including, without limitation, a waiver of the Section506(c) surcharge.

11. Waterford did not object to the Cash Collateral Order (including the 506(c) waiver) or the DIP Order and has benefitted significantly – more than any other creditor in this case - from Citizens' substantial contributions to this case.

---

[1] Citizens reserves its rights to any proceeds associated with the sale of the unencumbered parcels as a result of its Prepetition Liens, Postpetition Liens and Adequate Protection Superpriority Liens.

12. Specifically:

   a. Citizens' Cash Collateral paid Waterford no less than $82,407 in post-petition mortgage payments;

   b. Citizens' Cash Collateral and debtor-in-possession financing paid payroll for the Debtor's employees located at the Ohio real property, the continuous employment of whom the Prasco sale is contingent upon;

   c. Citizens' Collateral paid or will pay the Carve-Out of more than $2.6 million[2], which payment includes fees to Raymond James & Associates ("Raymond James"), the Debtor's investment banker.

13. Because of the efforts of Raymond James, and Citizens' funding, Waterford will receive payment in cash of ***at least*** $900,000, representing a greater recovery than any other secured creditor in this case (including Citizens). Such recovery comes without any contribution by Waterford to the Carve-Out.

14. Absent the sale to Prasco, Waterford will be left to either credit bid its mortgage or foreclose on the Ohio property.

15. Citizens had no knowledge of the Debtor's failure to make disposal of the materials at issue.[3]

---

[2] This figure does not include the Carve-Out required to pay the fees of the United States Trustee, which may add another $250,000.

[3] While Waterford asserts that "Citizens was in a position when it became DIP lender to conduct due diligence and determine what was at each location," it is Waterford that had actual access to the real property at all reasonable times. *See*, Waterford Objection, Paragraph 16. In fact, Waterford's mortgage gave it protective covenants and inspection rights that it could have enforced at any time. *See*, Waterford Objection, Proof of Claim, Mortgage, Paragraph 2.3(b) (covenant against the storage of Hazardous Substances except in compliance with law), Paragraph 2.4 (a) and (f) (covenants to comply with all laws), Paragraph 3.2 (right to obtain environmental site assessments and other inspections as Waterford deems reasonably necessary).

## LEGAL ARGUMENT

### A.    Waterford Asserts No Precedent to Require Citizens to Bear the Costs Associated with Transferring the Ohio Real Property, which is Waterford's Collateral

16.    Waterford cites no case that would require Citizens to fund cleanup costs relating to another secured creditor's collateral. Citizens is not a trustee, does not own the materials that need to be disposed of, could not take possession of those materials under applicable law and has no obligation to take any action whatsoever with respect to those materials.

17.    The cases cited by Waterford do not contradict these facts. Waterford's cases all relate solely to environmental cleanup and priority for the associated costs.

18.    This line of reasoning not only fails to apply to the facts at hand but also ignores the administrative insolvency of the case at bar and the fact that, even if the clean-up expenses are an administrative claim, Citizens' liens and Adequate Protection Superpriority Claims have priority.

19.    In fact, the case cited by Waterford stand for the proposition that cleanup costs *cannot* take priority over security interests in personal property. Ironically, that is exactly what Waterford argues should occur here, going even farther to assert that clean-up costs should prime security interests of creditors on non-impacted property. Waterford argues that the clean-up costs associated with the *real property* should take priority over Citizens' secured liens on the *personal property* for which no clean-up costs are due. *See* Waterford Objection, Paragraph 26, citing *In re Heldor Industries, Inc.*, 131 B.R. 578, 586 (Bankr. D.N.J. 1991).

20.    These arguments lack legal merit and should not be sustained by the Court.

**B.    The 506(c) Waiver in the Cash Collateral Order Is Binding and Enforceable**

21. Even if Waterford had standing to do so, Waterford cannot surcharge Citizens' collateral under Section 506(c) with the costs of cleanup related to Waterford's collateral.

22. Citizens' agreement to allow the use of its Cash Collateral during the course of this case was predicated on receiving protections routinely extended to secured creditors in bankruptcy cases, including, without limitation, a waiver of the estate's right to surcharge its collateral.  *See*, e.g. Cash Collateral Order.

23. In turn, the estate's granting of such waiver was contingent, in part, upon Citizens agreeing to pay certain, substantial costs of the estate, i.e. the Carve-Out, from the proceeds of its Collateral.

24. These bargained for and enforceable rights are critical to chapter 11 cases to incentivize secured lenders to work with debtors in progressing a chapter 11 case.  Permitting a later surcharge could chill the willingness of secured creditors to permit the use of cash collateral or enter into debtor-in-possession financing arrangements.

25. The Cash Collateral Order, likewise, is an order binding on this Court and the parties in interest by, among other things, *res judicata*.  *See*, *e.g. In re InteliQuest Media Corp.*, 326 B.R. 825, 831 (10th Cir. B.A.P. 2005) (noting that "where the waiver is approved by and expressly embodied in an order of the Bankruptcy Court, then, by the principle of res judicata, it is enforceable – at least against the Debtors in Possession, the Trustee and those served with the motions to approve the agreements containing the waivers – regardless of how it squares with public policy, with the Bankruptcy Code and with the interests of the estate."); *see also*, *In re Molten Metal Technology Inc.*, 244 B.R. 515 (Bankr. D. Mass 2000) (vacated and remanded on other grounds) (enforcing the 506(c) waiver in the contest of employee severance claims).

26. The application of *res judicata* is appropriate here.

27. The Cash Collateral order is a final order of the Bankruptcy Court, entered on the merits after lengthy briefing and multiple hearings.

28. Waterford had notice of the Debtor's motion for the use of cash collateral. *See* Docket No. 67, Certificate of Service.

29. Waterford did not object to that motion, nor to the entry of the final, Cash Collateral Order; Waterford did not appeal the Cash Collateral Order. *See*, *generally*, Docket.

30. Given the adequacy of notice to Waterford, the lack of its objection and Waterford's acceptance of the benefits of the Debtor's use of cash collateral (including regular mortgage payments in excess of $80,000), the 506(c) waiver in favor of Citizens should bind Waterford as much as it binds the Debtor, any trustee and other parties in interest.

C. **The Equities Weigh in Favor of Citizens Not Bearing Responsibility for the Destruction Costs.**

31. The equities do not favor requiring Citizens to contribute to the payment of the destruction costs.

32. Citizens is the sole lienholder on the equipment collateral and no other party is entitled to the payment on the proceeds thereof.

33. Waterford is the only secured party that benefits from the sale of the real property, and Waterford stands to recover a substantial portion of its secured claim at a higher percentage than any other secured party in this case, even though Waterford did not fund any portion of the Carve-Out and has received more than $80,000 in mortgage payments from Citizens' Cash Collateral.

34. Based on Waterford's own projections, *even after payment of disposal costs,* it may receive $950,000 on its $1,345,000 claim, which is a recovery of *at least* 70%, and Waterford

7

acknowledges that its recovery may be higher if disposal costs are lower than projected. *No other creditor in the case has received, or will receive, such a substantial recovery.*

35. In stark contrast, after payment of the Carve-Out, Citizens – which has made prodigious efforts to advance Debtor's case to the point where it is today – stands to recover less than 50% on account of its secured claim.

36. If the sale to Prasco is not approved, then Waterford will be left with its collateral and Citizens with its right to foreclose on the equipment or seek another buyer for the same.

37. Citizens bargained for the Section 506(c) waiver in agreeing to fund the Carve-Out, to fund the DIP amounts and for the use of Cash Collateral, all of which disproportionately benefitted Waterford vis a vis other secured creditors.

38. It is more than fair under these facts for Waterford to bear the costs of cleanup. Here, Waterford benefited from the preservation of its collateral, the costs of which have already been borne by Citizens in the form of (both directly through the DIP Order and indirectly through Cash Collateral):

   a. payment of the Debtor's employees (both directly through the DIP Order and indirectly through Cash Collateral), making possible a value-maximizing going concern sale of the Debtor's Ohio premises;

   b. payment of the Debtor's professionals (including the investment banker that made possible any cash recovery for the premises) of more than $2.6 million;

   c. payment of utilities and other costs of maintenance of the premises;

   d. payment of Waterford's mortgage of more than $82,000.

39. Waterford had notice of the Debtor's motions to use of Cash Collateral and did not

object. Waterford was happy to reap the benefits of regular mortgage payments, maintenance of its collateral and the marketing of its collateral for sale without agreeing to contribute to any of the costs associated therewith; indeed, it stood in line to be paid in full before the stored materials were discovered and did not offer to contribute to the fees of the professionals who made such payment possible.

### REQUEST FOR WAIVER OF MEMORANDUM OF LAW

40. Citizens requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which Citizens relies is set forth herein and this motion does not raise any novel issues of law.

### CONCLUSION

Citizens respectfully requests that this Court enter an Order (a) overruling the Waterford Objection; (b) granting the Prasco Sale Motion; and (c) granting such other and further relief as is just and proper.

STRADLEY, RONON, STEVENS & YOUNG, LLP

Date: May 19, 2025

*/s/*   Julie M. Murphy
Julie M. Murphy, Esquire
Daniel M. Pereira, Esquire

Stradley Ronon Stevens & Young LLP
457 Haddonfield Road, Suite 100
Cherry Hill, NJ  08002
Tel: (856) 321-2409
Fax: (856) 321-2415
E-Mail: jmmurphy@stradley.com
          dpereira@stradley.com

6217768